**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Virgile Jeffrey BARRETT (88–6410) and
Jeffrey B. Dolan (88–6411),
Defendants-Appellants.**

**Nos. 88–6410, 88–6411.**

United States Court of Appeals,
Sixth Circuit.

Argued July 27, 1989.

Decided Dec. 5, 1989.

Steven H. Cook, Asst. U.S. Atty., argued, Office of the U.S. Atty., Chattanooga, Tenn., John W. Gill, Jr., U.S. Atty., Office of the U.S. Atty., Knoxville, Tenn., for plaintiff-appellee.

Conrad Finnell, Robert S. Thompson, argued, Cleveland, Tenn., for defendant-appellant in no. 88–6410.

W. Thomas Dillard, argued, Ritchie, Fels & Dillard, Knoxville, Tenn., for defendant-appellant in no. 88–6411.

Before MERRITT, Chief Judge, NELSON, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

In this consolidated criminal appeal, Defendant–Appellant Jeffrey Barrett (Barrett) appeals from an order of the district court denying his motion to suppress evidence seized from a zippered pouch during the warrantless search of his automobile. Defendant–Appellant Dolan, who was charged in the same indictment as Barrett, but on different counts, contends on appeal that the district court abused its discretion and incorrectly applied the Federal Sentencing Guidelines (the Guidelines) in determining his sentence. He further contends that the government breached its plea agreement with him and that his due process rights were violated by the government's failure to provide him with sufficient advance notice of the evidence it was

going to introduce against him at the sentencing hearing. Because we find no error in the conduct of the sentencing hearing nor in the district court's application of the Sentencing Guidelines with respect to Dolan, and that the denial of Barrett's motion to suppress was warranted by the existence of probable cause to search Barrett's automobile, we affirm.

## I.

### A.

On May 26, 1988, Special Agent Richard Brogan of the Tennessee Bureau of Investigation (TBI) assisted federal agents of the Drug Enforcement Administration (DEA) in the execution of a search warrant at the trailer home residence of codefendant Jeffrey Dolan. The search was made pursuant to a criminal investigation of Dolan who was suspected of trafficking in cocaine. In demonstrating probable cause for the search warrant, the DEA relied upon information obtained from a government informant (Danny Garren) who had purchased an ounce of cocaine from Dolan at Dolan's residence prior to the execution of the search warrant on May 26, and prior to that date, in February of 1988.

Regarding the May 26, 1988 drug transaction, Garren had been instructed by law enforcement officials to negotiate for two ounces of cocaine but to purchase only one ounce. After purchasing one ounce of cocaine, Garren suggested that he would return later in the day to purchase a second ounce. Dolan assured Garren that another ounce would be available. Dolan apparently made it a practice to keep only small amounts of cocaine on hand at a given time, relying instead upon couriers who would routinely make deliveries to him from inventories maintained elsewhere, thereby minimizing the danger of being caught in the possession of bulk quantities.

Prior to the execution of the search warrant, Agent Brogan met with the informant (Garren) and with other law enforcement officials. As a result of this meeting, Brogan learned about the prior cocaine purchases. Brogan was informed that Dolan had told the informant that an additional ounce of cocaine was available for sale on May 26, 1988, and that at least two automatic handguns had been in Dolan's possession during the February cocaine purchase. Furthermore, law enforcement officials were informed that Dolan often received drugs at the trailer from couriers for distribution to his own buyers from his residence.

Based upon this information, a search warrant was obtained, and at approximately 6 p.m. on the evening of May 28, 1988, Agent Brogan along with various other law enforcement officials conducted a search of Dolan's residence. In the course of the search various items were found including a pistol, ammunition (a violation of federal law since Dolan was a convicted felon), the DEA's buy money used by Garren to make the earlier cocaine purchase, an additional $4,000.00 in cash, some pills, and a set of scales of the type commonly used by drug dealers to weigh cocaine. Despite the extensive search of Dolan's trailer, surrounding buildings, and his pickup truck, the second ounce of cocaine which Dolan had said would be available, and which officers expected to find since it was a primary object of the search, was not discovered.

Having essentially completed the search of Dolan's residence and adjacent grounds, Agent Brogan stepped outside of Dolan's trailer. At approximately 6:50 p.m., while standing outside, Brogan noticed a Honda automobile (later determined to be driven by Barrett) coming up the driveway to Dolan's residence. As the vehicle approached, there were no marked police units at the residence and all the officers who were involved in the execution of the search warrant were in plain clothes. Consequently, after parking the car, Defendant Barrett had no idea that Dolan's residence had just been searched.

Barrett was accompanied by his wife and seven year old child in the car. It is disputed whether or not Barrett actually emerged from the automobile, but Agent Brogan testified that Barrett got out of the car while leaving the engine running. It is undisputed, however, that Barrett, not

knowing that Brogan was a law enforcement officer, asked "Where's Dolan?" Agent Brogan approached Barrett and identified himself as a TBI agent and informed Barrett that Dolan was under arrest inside the trailer. Realizing that Brogan was a law enforcement officer and that Dolan was under arrest produced a stark change in Barrett's attitude and demeanor according to Brogan who testified that Barrett became quite noticeably nervous. Barrett then sat back down in his car. Under the circumstances, not knowing who Barrett was or why he was at Dolan's residence, and witnessing Barrett's abrupt change in behavior in response to the presence of the police and information about Dolan's arrest, Agent Brogan went over to Barrett's vehicle and stepped up to the open driver's window to ask Barrett for some identification. Agent Brogan immediately noticed a blue pouch that was in Barrett's lap between his legs. Brogan observed Barrett nervously handing the pouch over to his wife in the passenger's seat so as to hide the pouch from Brogan's sight. At that point, Agent Brogan "asked" Barrett to hand him the pouch and turn off the vehicle's ignition. Although he hesitated, Barrett complied with Agent Brogan's request for the pouch.[1]

While holding the pouch, Agent Brogan then asked Barrett for permission to open the container and look inside. Barrett responded to Brogan's request by stating that "It's not mine." Brogan repeated his request and upon receiving the same reply from Barrett, Brogan opened the pouch and discovered approximately one ounce of cocaine.

Thereafter, on June 8, 1988, a federal grand jury returned a three count indictment naming Barrett and Dolan. Barrett was charged with one count of possession with the intent to distribute approximately one ounce of cocaine. Barrett filed a motion to suppress evidence (the one ounce of cocaine in the pouch) discovered in the May 26, 1988 search, but after a suppression hearing was held, the district court ruled that because of his denial of ownership, Barrett lacked standing to assert a Fourth Amendment claim and his motion to suppress was denied. Barrett then entered a guilty plea agreement conditioned on his right to appeal the denial of his motion to suppress pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure.

## B.

Meanwhile, on September 14, 1988, Dolan, who had been indicted on two counts charging him with distributing approximately one ounce of cocaine, once on May 26, 1988, and once on February 16, 1988, entered a guilty plea agreement as to both counts. As part of the plea agreement, the parties agreed that Dolan's sentence would be between twenty-one and forty-six months imprisonment pursuant to the Sentencing Guidelines. Following the preparation of a pre-sentence report, which determined Dolan's total offense level to be 18 with a criminal history category of 1, both Dolan and the United States submitted objections. Dolan objected to the upward adjustment for his "managerial" role in the offense and the United States objected to the downward adjustment made for Dolan's acceptance of responsibility as a result of information received after the plea agreement was signed that Dolan had threatened the government informant in the case (Danny Garren).[2] A sentencing

---

1. Brogan testified that the pouch was a blue, soft, leather-type pouch, rather flimsy, and similar to a tobacco pouch, measuring about six inches long and about four or five inches tall with a zippered end. While holding the pouch in his hands, Brogan could not see in the container, but he testified that he could feel "some type of substance was inside the pouch." Brogan added that "there was some resistance. It felt like a powdery substance. We were on the scene there to search for cocaine. My first impression was this may be cocaine within the pouch."

2. Counsel for the United States alleged that Dolan had contacted Garren and informed him that for every day he, Dolan, spent in jail, Garren's family would suffer two days. Furthermore, the prosecution asserted that it had just been advised that Dolan had called Garren's mother and asked her whether or not she loved her son. Dolan vehemently denied the prosecution's allegations.

hearing was held on November 21, 1988, and after noting the two objections to the pre-sentence report, the district court ruled that the government was required to bear the burden of persuasion as to both issues by a preponderance of the evidence.[3] *United States v. Dolan*, 701 F.Supp. 138, 139–40 (E.D.Tenn.1988).

To substantiate their objection to the pre-sentence report's recommendation of a two-level downward adjustment for acceptance of responsibility and to refute Dolan's objection to the pre-sentence report's upward adjustment for his managerial role in the offense, the government presented two witnesses, Judy Townsend and Danny Garren. Townsend testified that she had purchased cocaine from Dolan on credit for resale to her customers. Danny Garren then took the stand, and in the course of his testimony, the court heard evidence of prior cocaine transactions which had transpired over a five year period. In addition to his testimony regarding cocaine purchases from Dolan and Dolan's possession of firearms, Garren also testified that Dolan used an individual named Joe Shell to relate threatening remarks to Garren and his mother.

Dolan objected to much of the evidence presented by the government on the grounds that the government's presentation of evidence relating to Dolan's prior cocaine transactions went beyond the parameters of the hearing. Based upon the plea agreement and the objections filed to the pre-sentence report, Dolan fervently maintained that the scope of evidence produced at the sentencing hearing relating to Dolan's acceptance of responsibility should have been limited to evidence of Dolan's alleged intimidation of Garren, which was the only event specifically mentioned by the prosecution in its objection to the pre-sentence report's finding on Dolan's acceptance of responsibility. Despite Dolan's vehement objections, however, the district court held that Dolan was "on fair notice as to what we're going to be talking about here today." Furthermore, the court concluded that evidence of previous cocaine transactions involving Garren and Dolan could be considered in "determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the counts of conviction."

At the conclusion of the sentencing hearing, the court rejected Dolan's contention that the pre-sentence report had incorrectly provided for a two-level upward adjustment for his role in the offense. In holding that Dolan was a "manager" within the definition of section 3B1.1 of the Guidelines, the court based its conclusion solely upon evidence provided by Garren of Dolan's active participation in cocaine transactions over a prolonged period.

While rejecting Dolan's contention that he had no managerial role, the court departed from the pre-sentence report and accepted the government's contention that Dolan had not accepted responsibility for his criminal activity. This decision was based upon the court's finding that the government had shown by a preponderance of the evidence that a threat of some kind had been made by Dolan, and that based

---

**3.** In *United States v. Dolan*, 701 F.Supp. 138, 140 (E.D.Tenn.1988), the district court concluded that the government bore the burden of showing by a preponderance of the evidence that a defendant's sentence should be increased or that a defendant's sentence should not be reduced under the Guidelines. Although the government concedes that it should bear the burden of persuasion to show that a defendant's sentence should be increased, on appeal, the government contends that with regard to mitigating factors, the defendant should bear the burden of showing that his sentence should be reduced. *See United States v. Urrego–Linares*, 879 F.2d 1234 (4th Cir.1989) (holding that a defendant should bear the burden of proof by a preponderance of

the evidence to establish a mitigating factor that would have the effect of lowering the defendant's ultimate sentencing range).

In the case at bar, although requiring the government to demonstrate that Dolan was not entitled to a mitigation of sentence pursuant to the holding in *U.S. v. Dolan*, 701 F.Supp. 138, 147, the court nonetheless found that the government had satisfied its burden of proof in refuting Dolan's acceptance of responsibility and thus Dolan was denied a reduction in his offense level. Consequently, the issue of which party must bear the burden of persuading the court as to the application or inapplication of a mitigating factor need not be decided at this time.

upon that alone, the government had satisfied its burden of proof. The court's decision was further bolstered by its finding that after scrutinizing the factors set forth in section 3E1.1 of the Guidelines, Dolan had failed to satisfy numerous conditions that could be weighed in determining his acceptance of responsibility.

Dolan filed objections to the district court's findings, contending that he had not been put on notice that any other information besides alleged threats made to Garren and his mother would be introduced by the government regarding his acceptance of responsibility; that the court had erred in finding that he was a manager; and that the court had erred in finding that he was not entitled to credit for acceptance of responsibility. The district court overruled Dolan's objections and sentenced him to forty-one months imprisonment. This timely appeal ensued.

## II.

We initially face Defendant Barrett's contention that he was unconstitutionally stopped and that the subsequent search and seizure of the pouch from his automobile without a warrant was a Fourth Amendment violation.

Although the district court denied Barrett's motion to suppress based upon an abandonment theory,[4] thus denying him standing to contest the search and seizure at issue, a denial of a motion to suppress will be affirmed on appeal if proper for any reason. *Brown v. Allen*, 344 U.S. 443, 459, 73 S.Ct. 397, 408, 97 L.Ed. 469 (1953); *United States v. Allen*, 629 F.2d 51, 57 (D.C.Cir.1980); *United States v. Lewellyn*, 723 F.2d 615, 617 (8th Cir.1983) (appellate court "may affirm on any ground supported by the record, even though that ground was not relied on by the district court."). Because we find that the record

demonstrates the existence of probable cause to conduct the search of Barrett's automobile, as well as all containers within the vehicle, *see United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), we affirm the denial of Barrett's motion to suppress.

We find no merit in Barrett's contention that Agent Brogan did not have sufficient reasonable suspicion to subject Barrett to an initial investigative detention. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that an investigative detention is permissible when it is based upon "specific and articulable facts which, taken together with rational inferences from those facts," give rise to a reasonable suspicion that the individual is, was, or is about to be engaged in criminal activity. *Id.* at 21, 88 S.Ct. at 1879; *see also Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980). In reviewing a challenged investigatory stop, "the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). Furthermore, "[i]n assessing the reasonableness of the stop, the facts are 'judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'" *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir.1986), *cert. denied*, 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987) (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889).

Based upon the factual record, we find that Agent Brogan clearly had reasonable suspicion to effect an investigatory stop of Barrett. Brogan had just complet-

---

**4.** Although we are not persuaded that Barrett "abandoned" the container at issue, *see People v. Cameron*, 73 Misc.2d 790, 342 N.Y.S.2d 773 (S.Ct.N.Y.1973), and we find that Barrett may have had standing to assert a Fourth Amendment claim because of a reasonable expectation of privacy as to his personal automobile and its

contents, *cf. U.S. v. Blanco*, 844 F.2d 344, 349–350 (6th Cir.1988), *cert. denied*, —— U.S. ——, 108 S.Ct. 2042, 100 L.Ed.2d 626, we nonetheless find that probable cause for the search provides an alternative basis for rejecting Barrett's motion to suppress.

ed a search of a known drug dealer's residence, but the search failed to turn up at least one ounce of cocaine that was expected to be on the premises based upon the information of a reliable informant. Brogan was also aware that Dolan's residence was used as a distribution point and that couriers made deliveries of drugs to the residence. When combined with Brogan's witnessing the dramatic change in Barrett's demeanor upon Barrett's being informed of Dolan's arrest and the identity of the plain clothes law enforcement officers in the area, we agree with the district court that an objective basis for effecting a *Terry* stop was amply demonstrated. Thus, under the circumstances, Agent Brogan was justified in asking Barrett for identification and his purpose for being on the premises. *See United States v. Streifel,* 781 F.2d 953, 957 (1st Cir.1986). Moreover, although a *Terry* stop would have been justified on the previously discussed facts alone, Barrett was not in fact detained or seized[5] until after Agent Brogan noticed Barrett's suspicious behavior in attempting to hide a pouch in his car. Upon witnessing Barrett's furtive and nervous effort to conceal the pouch, we find that probable cause and not just reasonable suspicion was established to justify Agent Brogan's search of the automobile and pouch.

The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). As noted in *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983):

[P]robable cause is a flexible, commonsense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" ... that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A

"practical, nontechnical" probability that incriminating evidence is involved is all that is required. (citations omitted).

Moreover, the existence of probable cause should be determined on the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective. As stated by the Supreme Court:

The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of law breakers. From these data, a trained officer draws inferences and makes deductions ... that might well elude an untrained person.... Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

Prior to conducting the search and seizing the pouch from Barrett's car, Agent Brogan, who was an experienced narcotics officer, was aware that Dolan's residence was a distribution point for cocaine. Brogan knew that a government informant had purchased an ounce of cocaine from the residence earlier in the day and that a second transaction had been arranged to coincide with the execution of the search warrant. After conducting the search and not finding any cocaine, Brogan knew that Dolan probably had access to another ounce of cocaine not currently on the premises. Brogan was also aware that Dolan's operating procedure was to store cocaine away from his residence and have it brought to his trailer home by couriers. He further knew that Barrett was looking for Dolan when he arrived just after Dolan had depleted his supply of cocaine stored and distributed from his trailer residence.

---

**5.** In *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), the Supreme Court held, "that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

Brogan witnessed Barrett's stark change in demeanor upon learning that police had arrested Dolan and were searching Dolan's residence. Brogan also observed Barrett nervously retreat to his automobile upon learning of Brogan's identity. Finally, Brogan observed Barrett nervously attempt to hide a pouch in his car.

Given the information known by Agent Brogan prior to his conducting the search of the pouch found within Barrett's automobile, we are persuaded that this information unequivocally would "warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (citation omitted). Thus, in light of all of the underlying circumstances pertaining to the search of Dolan's residence, once Brogan witnessed Barrett nervously attempting to hide the pouch within his automobile, we find that Brogan had probable cause to search the vehicle and its contents. *See Gates*, 462 U.S. 213, 243–44 n. 13, 103 S.Ct. 2317, 2334–35 n. 13 ("In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.").

Although as noted by the district court, a search of a vehicle for contraband instead of a weapon cannot be justified under *Terry*,[6] *see Michigan v. Long*, 463 U.S. 1032, 1049 n. 14, 103 S.Ct. 3469, 3481 n. 14, 77 L.Ed.2d 1201 (1983); *United States v. Gonzalez*, 763 F.2d 1127, 1130 n. 1 (10th Cir. 1985), it is well established that a warrantless search of an automobile lawfully stopped by police officers who have probable cause to believe the vehicle contains contraband is not unreasonable under the Fourth Amendment. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.

543 (1925); *United States v. Ross*, 456 U.S. 798, 799, 102 S.Ct. 2157, 2159, 72 L.Ed.2d 572 (1982). Moreover, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825, 102 S.Ct. at 2173. *See also United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

Relying upon *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) and *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), Barrett contends that probable cause to search his automobile was lacking, and that Brogan violated Barrett's rights by opening up the zippered pouch and looking into it without a warrant. However, unlike *Sanders* and *Chadwick* wherein the police had probable cause to believe that containers held contraband before the containers were placed within automobiles, and the police attempted to rely upon the automobile exception to circumvent the warrant requirement by waiting until the suspected containers were placed in vehicles, in the case at bar, there is no evidence nor is it even a contention that the police had any awareness of the pouch, not to mention probable cause, prior to observing Barrett attempting to hide the container which was already in Barrett's automobile.

Finding *Chadwick* and *Sanders* to be inapposite, we conclude that Barrett's contention that the warrantless search was illegal is foreclosed by the Supreme Court's decisions in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) and *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). *See United States v. Sanchez*, 861 F.2d 89 (5th Cir.1988). In *Johns*, the Supreme Court upheld the validity of the warrantless search of packages discovered in the back

---

**6.** When examined by the government, Brogan testified that the pouch was large enough that "you could hold a small automatic pistol in it." When questioned about being concerned for his safety and well being when he first saw the pouch and Barrett's corresponding nervous behavior, Brogan replied that safety was "always a concern," and that given Barrett's attempt to hide the pouch, "obviously, there was something in there [the pouch] that he did not want me to know." The district court, however, concluded that in asking for the pouch, Brogan was somewhat equivocal in expressing any concern for his own safety, and that it was more likely that Brogan thought the pouch contained contraband rather than a weapon.

of a pickup truck on the basis of the automobile exception. In upholding the search, the Supreme Court reaffirmed and refined its holding in *Ross:*

> [T]he exception to the warrant requirement recognized by *Carroll* allows a search of the same scope as could be authorized by a magistrate. "A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search." Although probable cause may not generally justify a warrantless search of a container, ... the protection afforded by the Fourth Amendment varies in different settings. "[A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." Consequently, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."

*Johns,* 469 U.S. at 483–84, 105 S.Ct. at 884–85 (citations omitted); *see also United States v. Sanchez,* 861 F.2d 89, 91–92 (5th Cir.1988) (analyzing the development of the scope of the automobile exception as applied to containers found within vehicles).

Applying the automobile exception as expressed by the Supreme Court in *Ross* and in *Johns* to the facts of the case at hand, we find that Agent Brogan's observations of Barrett's nervous and suspicious conduct as to a pouch in his automobile, in connection with the other information known by Brogan pertaining to narcotics activity at Dolan's residence, provided Brogan probable cause to believe that Barrett's vehicle, as well as the pouch, contained contraband. Accordingly, although we differ with the reasoning of the district court opinion, we nonetheless affirm the decision of the district court denying Barrett's motion to suppress.

### III.

We next consider Defendant Dolan's numerous contentions relating to his sentencing hearing and plea agreement.

### A.

Dolan's first contention on appeal is that the government breached the terms of the plea agreement made with him. Dolan specifically maintains that the government breached the second paragraph of the four paragraph plea agreement. The paragraph at issue states:

> 2. At the time of the signing of this plea agreement, except for the information stated in open court, [alleged threats to Garren], the United States possesses no evidence or information that defendant has not accepted responsibility for the criminal conduct set forth in the indictment in this case. Both the defendant and the United States, however, recognize that the determination of whether the defendant has accepted responsibility for his conduct is one which will be made by the court based on all the evidence available to it at sentencing.

Appellate review of the plea agreement is, however, limited:

> To determine whether a plea agreement was violated, we first determine "what the parties to the plea bargain reasonably understood to be the terms of the agreement...." What the parties agreed to "is a question of fact to be resolved by the district court...." Accordingly, the district court's findings as to the terms of a plea agreement are reviewed only for clear error.

*United States v. Sutton,* 794 F.2d 1415, 1428 (9th Cir.1986) (citations omitted).

Undoubtedly, in entering the plea, Dolan was concerned about receiving a two-point reduction in his offense level pursuant to section 3E1.1 of the Guidelines which provides for such a reduction "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." § 3E1.1(a). It is axiomatic, however, that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled," *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427

(1971), but that "[w]hile the government must be held to the promises it made, it will not be bound to those it did not make." *United States v. Fentress*, 792 F.2d 461, 464 (4th Cir.1986).

█ Reviewing the record at the time of the entry of the plea so as to ascertain the parties' understanding of the terms of the plea agreement, *see Sutton*, 794 F.2d at 1423; *United States v. Read*, 778 F.2d 1437, 1442 (9th Cir.1985), *cert. denied*, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986) we find that the terms of the plea agreement were not breached by the government's objection to a sentence reduction for Dolan's acceptance of responsibility. At the entry of the plea, the district court noted that the plea agreement provided for a set sentence so the court assumed that the parties had met and calculated the Guidelines based upon certain assumptions. In response to the court's comment, the government's attorney stated that "some discrepancy" as to the facts in connection with Dolan's acceptance of responsibility and his role in the offense existed and that a dispute as to those two issues "may be left open for the sentencing hearing." Moreover, the government asserted that it was "reserving the right, as [was] the defendant, to present facts to his honor on which he can make a finding on those areas to set a sentence within the range provided in the plea agreement." Thus, in entering the plea, Dolan reasonably knew that the government disputed his acceptance of responsibility, and that ultimately, the decision was in the hands of the district court to be decided based upon all available evidence at the sentencing hearing.

At the sentencing hearing, the government offered some nine items of evidence addressing the two issues (Dolan's acceptance of responsibility and his role in the offense) raised by the parties in objection to the pre-sentence report. Pertaining to the issue of Dolan's acceptance of responsibility, the government specifically introduced evidence that Dolan had been responsible for threats made to a government informant. This was information related to Dolan at the time of the government's objection to the pre-sentence report. Dolan was thus fully aware that the issue of his acceptance of responsibility was disputed by the government because of the alleged threats made to Garren and his mother. Since the clear language of paragraph two of the plea agreement did not preclude the introduction of this evidence, we therefore find that the government's presentation of evidence of the threats at the sentencing hearing did not constitute breach of the agreement.

While conceding that the government informed him of their intention to introduce evidence of the alleged threats to Garren, Dolan maintains that the government introduced additional evidence on the acceptance of responsibility issue, and that the presentation of such evidence contradicted the terms of the plea wherein the government promised that but for the information "stated in open court" (alleged threats to Garren) the government possessed "no evidence or information that defendant [had] not accepted responsibility for the criminal conduct set forth in the indictment in this case." We find, however, that although some evidence presented by the government relating to Dolan's managerial role in the offense could also have been applied to the issue of his acceptance of responsibility, the precise basis for the district court's decision denying Dolan a two-level reduction for acceptance of responsibility undermines Dolan's assertion that a breach occurred because extraneous evidence unrelated to the alleged threats to Garren was not relied upon by the Court nor critical to its decision denying Dolan a mitigation of sentence.

The district court specifically found that "a threat of some kind was made by the Defendant" and that "based on that alone ... I think the Court ... will conclude that the government has shown that there has been no acceptance of responsibility by this Defendant." Thus, although the court further found that based upon the totality of evidence presented at the sentencing hearing Dolan had done nothing "voluntary" warranting a reduction in sentence, the court clearly held that evidence of Dolan's responsibility for threats made to Garren

was dispositive of the issue of Dolan's acceptance of responsibility.

Since the district court's decision rejecting a reduction in Dolan's sentence was based "alone" on evidence presented by the government relating to threats to Garren, evidence clearly within the scope of the plea agreement, we find that no breach of the plea agreement occurred.

B.

■ Secondly, Dolan alleges that pursuant to section 6A1.2 of the Guidelines, the government failed to provide him with the requisite notice of factors it would argue to enhance his sentence and that his due process rights were violated by the government's failure to provide him with the precise basis upon which the government was going to support or dispute the pre-sentence report. We find, however, that Dolan was on notice of the issues in dispute at the sentencing hearing, and that Dolan not only had the opportunity, but did in fact attempt to rebut the government's presentation of evidence relating to threats directed at Garren.

■ Dolan would have us hold that a defendant is entitled to greater mandatory discovery at sentencing than he is entitled to at trial. We find such a position to be untenable and wholly unsupported by section 6A1.2 of the Guidelines. Section 6A1.2 as amended only requires the "timely disclosure of the pre-sentence report." Likewise, we find Dolan's argument that due process requires the government to provide him notice not only of what factors are at issue, but how the government intends to argue its case to be unpersuasive. Pursuant to the requirements of due process, a defendant who has pled guilty has a due process right to a fair sentencing procedure. *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir.1988). This right includes the right to be sentenced on the basis of accurate information. *United States v. Rone,* 743 F.2d 1169, 1171 (7th Cir.1984); *Stevens,* 851 F.2d at 143. A defendant, however, has no due process right to be informed in advance of the identity of witnesses or of the expected substance of their testimony. *United States v. Diaz-Villafane,* 874 F.2d 43, 47 (1st Cir.1989). The extent of a defendant's constitutional right is "not to be sentenced on the basis of invalid information and, therefore, [the defendant] must be given an opportunity to rebut any challenged information." *United States v. Fogel,* 829 F.2d 77, 90 (D.C.Cir. 1987) (citations omitted); *Diaz-Villafane,* 874 F.2d at 47; *see also Stevens,* 851 F.2d at 143; *United States v. Safirstein,* 827 F.2d 1380, 1385 (9th Cir.1987); *Kohley v. United States,* 784 F.2d 332, 334 (8th Cir. 1986).

We find no merit in Dolan's contention that his due process rights were violated as a result of his inability to rebut the evidence introduced by the government at the sentencing hearing. In the dispute over Dolan's acceptance of responsibility, Dolan did introduce evidence in the form of previous testimony denying that he made or caused anyone else to make any threats to Garren. Furthermore, Dolan presented testimony from a private detective, Michael Cohan, who stated that he had interviewed Joe Shell, the person who allegedly made the threats to Garren, and that according to Cohan, Shell denied making any threats to Garren. Having heard the conflicting testimony, the district court concluded that Garren's testimony was more credible and the court found that the government had shown to the court's satisfaction by a preponderance of the evidence that a threat of some kind was made by the Defendant, and based on that alone the court concluded that the government had shown that there had been no acceptance of responsibility by Dolan. Thus, regarding acceptance of responsibility, Dolan was provided notice of the factor in dispute as prescribed by the Guidelines, and he was given a full and fair opportunity to rebut the government's evidence on that issue.

Regarding Dolan's role in the offense, the district court relied on the testimony of Garren pertaining to Dolan's leadership role in previous drug transactions. Dolan contends that he was denied a meaningful opportunity to explain or rebut evidence presented by the government at the sen-

tencing hearing as a result of his not having prior notice of the government evidence. The record indicates, however, that although Dolan's request to adjourn the sentencing hearing in order to be given more time to prepare was denied, the court did grant Dolan a ten day period in which to file written objections to the court's findings. In his written objections, however, Dolan failed to support his request for a continuance with any supported allegation that he had additional evidence relating to the allegedly "surprise" testimony presented by the government at the sentencing hearing. Thus, we find that as a result of the ten day period which the district court granted for filing objections, Dolan was given a meaningful opportunity to explain and rebut the evidence presented by the government at the sentencing hearing, but while the opportunity was given, no rebuttal evidence was forthcoming. *See United States v. Papajohn,* 701 F.2d 760, 763 (8th Cir.1983) (citations omitted) ("the procedure for rebuttal 'lies within the sound discretion of the sentencing judge, and the exercise of discretion in this regard will not be overturned in the absence of plain error or an abuse of that discretion.'") (quoting *Orner v. United States,* 578 F.2d 1276, 1279 (8th Cir.1978)). Consequently, we find no violation of Dolan's due process rights.

### C.

■ We next consider Dolan's contention that the district court abused its discretion and violated his Fifth Amendment right against self-incrimination when the court considered his refusal to cooperate with authorities in denying him a two-level downward adjustment for acceptance of responsibility.

While we agree that "a sentencing judge may not penalize the exercise of a defendant's privilege against self-incrimination by enhancing his sentence based upon the defendant's failure to cooperate by implicating other persons or otherwise admitting guilt to crimes with which he is not charged," *United States v. Safirstein,* 827 F.2d 1380, 1388 (9th Cir.1987), we find that in the case at bar the trial court's denial of a downward adjustment for defendant's acceptance of responsibility was based upon factors that did not infringe upon Dolan's rights under the Fifth Amendment.

The court reviewed the application notes to § 3E1.1 and noted that Dolan had not complied with several factors listed as demonstrating acceptance of responsibility. The court's findings included: (1) There was no voluntary termination or withdrawal from criminal conduct or association; (2) Dolan did not voluntarily surrender to authorities promptly after commission of the offense; and (3) There was no voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense. Although the court did compare the "voluntary" aspect of several of the noted factors in § 3E1.1 to cooperation, as demonstrated by the court's comment that voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense "sounds somewhat like cooperation to me [the court]," in its tentative findings at the conclusion of the sentencing hearing, the trial court unequivocally indicated that Dolan's lack of cooperation was not the factor relied upon by the court in concluding that there was no acceptance of responsibility. Rather, the court found that the evidence of threats to Garren, "alone," was dispositive of the issue and demonstrated Dolan's failure to accept responsibility for his offense.

Thus, while we acknowledge that the court did examine and question Dolan's lack of "cooperation," we find that the court did properly consider the factors specifically set forth in § 3E1.1 as well as information relating to threats made to Garren, and that the court relied on the latter in denying Dolan a departure under section 3E1.1. Since any consideration or mention of Dolan's failure to cooperate was harmless in light of the reasoning relied upon by the district court, we find that the district court denied Dolan a two level adjustment under section 3E1.1 for valid reasons that did not implicate Dolan's rights under the Fifth Amendment.

## IV.

Lastly, Dolan contends that the district court incorrectly applied the Sentencing Guidelines in finding that Dolan was not entitled to credit for acceptance of responsibility and in determining that Dolan had a "managerial" role in the offense.

Appellate review of sentences under the Guidelines is set forth in 18 U.S.C. § 3742, which provides in relevant part as follows:

> (d) Consideration.—Upon review of the record, the court of appeals shall determine whether the sentence—
>
> (1) was imposed in violation of law;
>
> (2) was imposed as a result of an incorrect application of the sentencing guidelines;
>
> .    .    .    .    .
>
> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
>
> (e) Decision and disposition.—If the court of appeals determines that the sentence—
>
> (1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate....

### A.

■ Dolan contends that the government failed to prove that he was a manager in the offense and that at most, a buyer/seller relationship was demonstrated. We find, however, that the government did demonstrate Dolan's aggravating role in the offense by a preponderance of the evidence.

Section 3B1.1(c) of the Guidelines provides for a two-level increase in offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." Whether Dolan was "an organizer, leader, manager or supervisor" is a question of fact reviewable "under the clearly erroneous standard, giving due regard to the trial court's assessment of the credibility of the witnesses." *United States v. Barreto*, 871 F.2d 511, 512 (5th Cir.1989); *see also United States v. Perez*, 871 F.2d 45, 48 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

Application Note 3 of section 3B1.1 provides several factors to be considered in the determination of whether or not the Defendant is an "organizer, leader, manager or supervisor" including: (1) defendant's exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. Application Note 3, § 3B1.1; *Barreto*, 871 F.2d at 511.

Reviewing the record, the district court's conclusion that Dolan satisfied the criteria of section 3B1.1 was not without foundation and accordingly was not clearly erroneous. The court based its findings entirely upon the evidence presented by and relating to Garren, the government witness, and thereby explicitly avoided relying upon related conduct specified in the pre-sentence report pertaining to alleged drug dealings that Dolan had with persons other than Garren. Based upon the testimony of Garren alone, the court made the following findings:

> The court concluded that the proof demonstrated that Dolan was a source of cocaine for Garren and "two or three others that he supplied;" that the Defendant received these drugs from Florida, one such occasion being a trip which Mr. Garren himself took with the Defendant; that we're dealing here with a fairly large amount of drugs, at least in the kilograms, as far as those drugs being taken, the amounts of drugs being taken up here from Florida periodically; that

substantial income was involved. The proof further showed that the Defendant at least constructed a $60,000 home without taking out a loan, and, of course, we have also the proof about the amounts of drugs, how much they cost and that kind of thing in the record, and it can be inferred from that many thousands of dollars were involved in the operation.

The Court finds as another factor relating to the managerial determination that Mr. Garren was fronted the money by the Defendant, in other words, he— not the money, the cocaine. In other words he got the cocaine without having to pay for it, he got it on credit, and then presumably paid Mr. Dolan back later.

The Court also finds that as a factor that bears upon this, that this activity took place over quite a lengthy period of time, from 1982 through 1986, roughly, four years, possibly five years.

All of the court's findings of fact were derived from the testimony of witnesses, and predominantly from Garren's testimony. Since due regard must be given to the trial court's assessment of the credibility of witnesses, *see United States v. Barreto*, 871 F.2d 511, 512; *United States v. Perez*, 871 F.2d 45, we find that the district court's conclusion that Dolan was "an organizer, leader, manager or supervisor" was not clearly erroneous.

### B.

■ Dolan further contends that the district court incorrectly applied the Guidelines in finding that he was not entitled to a two-level credit for acceptance of responsibility.

Section 3E1.1(a) of the Guidelines provides for a two-level reduction "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The standard of review for decisions made concerning this section is set forth in Application Note Five: "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on re-

view and shall not be disturbed unless it is without foundation."

The Sixth Circuit has recently elaborated on the standard of review for a district court's "acceptance of responsibility" determination:

Whether or not a defendant has accepted responsibility for his crime is a factual question. The district court's determination of that question, like its findings with respect to manager status, and minimal participant status, enjoys the protection of the "clearly erroneous" standard. Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the "clearly erroneous" standard will nearly always sustain the judgment of the district court in this area. Indeed, the guidelines specifically state that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation."

*United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989) (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989).)

Dolan argues that the district court penalized him for his refusal to cooperate with authorities, and that the court erred by making cooperation the *sine qua non* of acceptance of responsibility. Moreover, he maintains that he should have been granted the reduction based upon his having entered a plea of guilty, and his having stated that he was sorry.

Pursuant to section 3E1.1, however, "[a] defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right." § 3E1.1(c). "A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section." Application Note 3 to section 3E1.1; *see also United States v. Belgard*, 694 F.Supp. 1488, 1497 (D.Or.1988). Dolan's guilty plea was supplemented by his statement to the district court that he was sorry, but given

the unique opportunity of the district court to extensively observe Dolan and evaluate his acceptance of responsibility, the district court's judgment is entitled to great deference on review and its decision that a defendant has not demonstrated sincere remorse should not be disturbed unless it is clearly erroneous. Application Note 5 to section 3E1.1; *cf. United States v. Buenrostro,* 868 F.2d 135, 138 (5th Cir.1989).

In concluding that Dolan did not merit a two-level reduction for acceptance of responsibility, the court clearly considered all of the factors enumerated in Application Note 1 to section 3E1.1. Based upon all of the evidence presented at the sentencing hearing and in the pre-sentence report, the court concluded that "the Defendant has not done anything voluntarily in connection with this case whatsoever." The court then found that the government demonstrated by a preponderance of the evidence that a threat of some kind was made by the Defendant directed at a government informant and witness. Thus, after reviewing the factors set forth in section 3E1.1 of the Guidelines as well as the testimony regarding threatening remarks directed to Garren, the court weighed the evidence and concluded that the Defendant had not accepted responsibility within the definition of the guidelines.

Given the evidence relied upon by the district court, we find that the court's determination of the acceptance of responsibility issue was not clearly erroneous or without foundation and that any consideration by the district court of Dolan's refusal to cooperate and testify against his associates was sufficiently mitigated by the court's reliance upon other factors in denying Dolan a reduction in sentence. Because we find no constitutional error nor clear error in the district court's disposition of the acceptance of responsibility issue, we will not disturb the district court's determination.

## V.

For the foregoing reasons, the district court's denial of Defendant Barrett's motion to suppress and the court's sentence imposed upon Defendant Dolan are AFFIRMED.