978 F.2d 1259
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry P. BUNDY, Jr., Defendant-Appellant.
 No. 92-5007.
 United States Court of Appeals, Sixth Circuit.
 Oct. 29, 1992.
 
 Before DAVID A. NELSON and SILER, Circuit Judges, and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a sentence imposed in a federal drug trafficking case. The defendant challenges the district court's refusal to grant a downward departure without the government's having made a "substantial assistance" motion under U.S.S.G. § 5K1.1. Agreeing with the district court that the plea agreement did not require the government to make such a motion, we shall affirm the sentence.
 
 
 2
 * The defendant, Jerry P. Bundy, Jr., was on parole in connection with an earlier federal drug trafficking conviction when he was arrested by the Chattanooga police for possession of cocaine hydrochloride. Mr. Bundy asserts that he made repeated requests to talk with his lawyer. The lawyer, Leroy Phillips, Jr., proved to be unavailable, but Mr. Bundy says that state and federal police continued to interrogate him anyway. A federal prosecutor who was summoned by the police denies that Mr. Bundy ever asked for counsel in his presence.
 
 
 3
 The police learned that Mr. Bundy had been buying quarter kilogram quantities of cocaine on a monthly basis from a supplier in Atlanta, Georgia. With the approval of the federal authorities (who had been called in because of the parole violation) Mr. Bundy was turned loose after promising to cooperate with the police in developing a case against his supplier. Bundy subsequently instructed Attorney Phillips to contact the prosecutors and work out the details of what he was to do.
 
 
 4
 Mr. Bundy says that he was in "constant contact" with his lawyer to find out when there would be a meeting with the authorities. Bundy also says that he talked with a Detective Lomenick and was in contact with his probation officer.
 
 
 5
 On April 7, 1991, a week after the arrest, a federal grand jury indicted Mr. Bundy for possession of cocaine with intent to distribute it. Bundy was not taken into custody at that point, the federal authorities having decided to give him time to follow through on his promise to cooperate. According to the authorities, however, he did not stay in contact with the police and he did not appear to be cooperating in any way.
 
 
 6
 Attorney Phillips says that defendant Bundy was in "constant contact" with him, and that he in turn was in "constant contact" with Detective Lomenick and in occasional contact with Assistant U.S. Attorney Steven Cook. Mr. Phillips says he understood from Detective Lomenick that the details of Bundy's cooperation would have to be worked out with Mr. Cook and a representative of the state prosecutor's office. When Detective Lomenick called a meeting for that purpose, however, Mr. Phillips declined to let his client attend; he himself had to be in court, and he did not want Mr. Bundy meeting with the authorities alone. Before allowing Bundy to meet with Detective Lomenick, moreover, Phillips wanted the arrangement blessed by the federal and state prosecutors.
 
 
 7
 On May 10, 1991, several weeks having passed without any apparent progress, Mr. Bundy was arrested on a federal warrant. Both Mr. Phillips and his law partner, Leonard "Mike" Caputo, let it be known thereafter that Mr. Bundy still wanted to cooperate.
 
 
 8
 Because he was a parole violator, Mr. Bundy was held on the federal charges without bond. His trial was set for July 11, 1991. A few days before the scheduled trial date, Mr. Bundy entered a guilty plea pursuant to a written plea agreement that included a promise of cooperation. Sentencing was set for October 21, 1991.
 
 
 9
 In the presence of Attorney Caputo, detectives questioned Mr. Bundy again while he was in federal custody. Mr. Bundy maintained that he only knew the first name of the Atlanta supplier; for the first time since his initial arrest by the state police, however, Mr. Bundy volunteered two telephone numbers at which he said he had called the supplier.
 
 
 10
 In describing the pattern of his dealings with the supplier, Mr. Bundy said that he would give the supplier $9,000. The supplier would then leave, returning later with a quarter kilogram of cocaine. The authorities were not too sanguine about the prospects for a "reverse sting" operation in light of this information. It was against agency policy for officers of the Drug Enforcement Agency to give a stranger as much as $9,000 and wait to see if he returned with illicit drugs.
 
 
 11
 On October 4, 1991, a presentence report was completed by a probation officer and turned over to the parties. The cover sheet gave express notice of a local rule requiring that any objections be filed within ten days.
 
 
 12
 Because of Mr. Bundy's status as a career offender, the report recommended that his base offense level be set at 32. See U.S.S.G. § 4B1.1. With a two-level reduction in the offense level for acceptance of responsibility, and using the Criminal History Category (VI) in which Mr. Bundy's record placed him, this produced a guideline sentence range of 168 to 210 months.
 
 
 13
 About two weeks after completion of the presentence report, Mr. Bundy's counsel filed a motion to postpone the sentencing. The motion indicated that Bundy wished to continue his efforts to cooperate with the DEA and that he was not being given an opportunity to cooperate. No additional time was requested for filing objections to the presentence report. The court granted the motion for a continuance, setting November 25, 1991, as the new sentencing date.
 
 
 14
 Early in November two agents attempted to contact the Atlanta supplier at the telephone numbers provided by Mr. Bundy. Although the agents waited about an hour, they received no response to the pager calls. Mr. Bundy then told the agents that he had two other telephone numbers for the Atlanta supplier, but they were in an envelope that had been seized when he was arrested. Mr. Bundy says that the police never followed up on this.
 
 
 15
 On November 18, 1991, the probation officer prepared an addendum to the presentence report in which he noted that neither party had filed any objections to the report during the prescribed ten-day period.
 
 
 16
 Four days before sentencing Mr. Bundy filed another motion for a continuance. He explained that "due to his incarceration, and through no fault of his own, he had been unable to give the assistance to the government that he would have been able to do had he been out on bond." The court rescheduled the sentencing for Monday, December 9, 1991.
 
 
 17
 On December 6, 1991, some two months after his receipt of the presentence report, Mr. Bundy filed objections to the report. The burden of his objections was that he should receive a downward departure because he had put forth a "good faith effort to cooperate." He blamed the government for the failure of his purported attempt to cooperate, and he said that the government's decision not to file a § 5K1.1 motion for a downward departure was "arbitrary." The objections were accompanied by affidavits recounting some of the events mentioned above.
 
 
 18
 The sentencing hearing went forward as scheduled on December 9, 1991, at which time Mr. Bundy's counsel again suggested that the government had violated the plea agreement by not filing a § 5K1.1 motion. The government summarized Mr. Bundy's "minimal" assistance, and defense counsel offered a counterview of the events. The district court then held that the government had complied with the agreement. The agreement merely required the government to "bring to the Court's attention the nature, extent, and value of the defendant's cooperation," the court concluded, and this had been done.
 
 
 19
 Because the government had not filed a § 5K1.1 motion, the district court held that it could not depart downward on the basis of the defendant's supposed cooperation. Mr. Bundy's objections to the presentence report were held to be untimely, moreover, and the court said that even if they had been timely, they would not have changed the ruling. In making a choice among the options available within the guideline range, however, the court did take Mr. Bundy's attempt to cooperate into account. Mr. Bundy was sentenced to imprisonment for 168 months, the lowest term that could have been imposed without a departure from the guideline range.
 
 II
 
 20
 A. Breach of Plea Agreement.
 
 
 21
 Mr. Bundy contends on appeal, as he did in the district court, that the government violated the terms of the plea agreement by failing to file a § 5K1.1 motion. Plea agreements are construed strictly, and the courts will not infer "as a matter of law a term which the parties themselves did not agree upon." United States v. Benchimol, 471 U.S. 453, 456 (1985).
 
 
 22
 The plea agreement before us here contains only one term--paragraph 6--that obligates the government to do anything in response to cooperation by the defendant. Paragraph 6 provides as follows:
 
 
 23
 "At the time of sentencing the United States agrees to bring to the Court's attention the nature, extent, and value of the defendant's cooperation. This information will be provided to the Court so that it may be considered in determining a fair and appropriate sentence under the facts of the case."
 
 
 24
 The district court did not read this language as manifesting an agreement that the government should file a § 5K1.1 motion. Neither do we. Paragraph 6 does not mention § 5K1.1 or "substantial assistance" at all. Mr. Bundy's experienced counsel surely knew how to draft a provision committing the government to filing a § 5K1.1 motion, and if the parties had agreed that the government would file such a motion, we have no doubt that the written document would have said so. "While the government must be held to the promises it made, it will not be bound to those it did not make." United States v. Barrett, 890 F.2d 855, 864 (6th Cir.1989) (quoting United States v. Fentress, 792 F.2d 461, 464 (4th Cir.1986)).
 
 
 25
 The government did promise, of course, to advise the district court of the defendant's cooperation. We think it kept that promise. While characterizing his assistance as "minimal," the government informed the court of "the nature, extent, and value of [Mr. Bundy's] cooperation." The plea agreement required nothing more. Absent an express undertaking to conduct the kind of investigation in which meaningful cooperation by the defendant would be feasible, moreover, the government was under no enforceable duty to conduct such an investigation. Law enforcement resources are limited, and decisions on how to allocate them are normally left to the executive branch.
 
 
 26
 B. Motionless § 5K1.1 Downward Departure.
 
 
 27
 Mr. Bundy concedes that a § 5K1.1 motion by the government is usually required before there can be a downward departure based on the defendant's substantial assistance. See, in this connection, United States v. Dumas, 934 F.2d 1387, 1390-91 (6th Cir.), cert. denied, 111 S.Ct. 2034 (1991); United States v. Davis, 919 F.2d 1181, 1187-88 (6th Cir.1990); United States v. Levy, 904 F.2d 1026, 1035 (6th Cir.1990), cert. denied, 111 S.Ct. 974 (1991). Mr. Bundy argues, however, that the district court ought to have considered a downward departure here because of the "alleg[ation of] bad faith and arbitrariness on the part of the government and its agents...." The United States Supreme Court recently rejected a similar argument in Wade v. United States, --- U.S. ----, 112 S.Ct. 1840, 118 L.Ed.2d 524, 60 U.S.L.W. 4389 (U.S. May 18, 1992).
 
 
 28
 The defendant in Wade argued that the district court ought to have considered a downward departure because "the Government violated his constitutional rights by withholding a substantial-assistance motion 'arbitrarily' or 'in bad faith.' " 112 S.Ct. at 1844, 118 L.Ed.2d at 531. To prevail on such a contention, the Supreme Court decided, the defendant must make a "substantial threshold showing" that the government's decision not to file a motion was based on some constitutionally improper motive, such as race or religion. Id. If such a threshold showing is made, the sentencing court must conduct an evidentiary hearing to determine the facts. Should an unconstitutional motive be established, the defendant must still "make a showing of [substantial] assistance," id., 112 S.Ct. at 1844, 118 L.Ed.2d at 532, "in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1. Only when all this has been shown is the court required to consider a downward departure.
 
 
 29
 Like the defendant in Wade, Mr. Bundy "has never alleged, much less claimed to have evidence tending to show, that the Government refused to file a motion for suspect reasons such as his race or his religion." Wade, 112 S.Ct. at 1844, 118 L.Ed.2d at 531. Because he failed to make the "substantial threshold showing" required by Wade, we do not even reach the question of whether he provided substantial assistance, actually or constructively. If this question were reached, it seems most unlikely that it could be resolved in Mr. Bundy's favor.
 
 
 30
 The sentence is AFFIRMED.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation