45 F.3d 431
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel J. JACKSON, Charles W. ter Horst, Defendants-Appellants.
 Nos. 93-4121, 93-4291.
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1994.
 
 Before: LIVELY, JONES and SILER, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 At a joint trial a jury convicted the defendants of three narcotics offenses, including conspiracy to possess marijuana with intent to distribute it. Their appeals were consolidated for argument and decisions. The defendants make a number of arguments on appeal, none of which requires reversal. Accordingly, we affirm the convictions and sentences.
 
 I.
 
 2
 On March 18, 1992, Officer Graham was working traffic enforcement and drug interdiction on Interstate 70 in Huber Heights, Ohio. He positioned his cruiser approximately one-half mile inside a 55 m.p.h. speed zone leading from a 65 m.p.h. zone. Graham clocked a van driven by the defendants ter Horst and Jackson travelling at 65 m.p.h. when it crossed into the 55 m.p.h. speed zone. Although the van later slowed to 50 m.p.h., Graham stopped it apparently to issue a speeding citation, which he eventually did. The van had an out-of-state license plate, dark tinted windows, a rental car sticker on the back, and other characteristics consistent with a "drug courier profile."
 
 
 3
 When the van stopped, ter Horst, the driver, immediately got out of the vehicle and quickly walked to the back of the van. Officer Graham noticed a very strong odor of cologne and what he believed to be marijuana on ter Horst, who also appeared nervous. At this time, another police officer arrived at the scene to provide routine backup. As Graham approached the passenger side of the vehicle, the defendant Jackson left the van, closing the door behind him, and attempted to move Officer Graham toward the rear of the van. When Jackson opened the van door, Officer Graham smelled marijuana coming from the inside of the van. Jackson informed the officer that he had rented the van for ter Horst, his employer or co-worker.
 
 
 4
 When asked if he had any contraband or anything illegal in the van, ter Horst responded he did not. Officer Graham then asked ter Horst if he could take a look in the van, and ter Horst asked, "do you mean search the van?" Officer Graham replied "yes." Ter Horst then asked, "are you going to take everything out of the van?" Graham responded, "no, I can look at it while it's in the van." At this time ter Horst said "okay, go ahead." This conversation took place in the presence of Jackson who did not object to the search or ask any questions.
 
 
 5
 Upon entering the van, Officer Graham again smelled marijuana and noticed several canvas suitcases with the price tags still on them. The bags were very warm. When he opened the suitcases, he found fresh marijuana. Officer Graham then placed ter Horst and Jackson under arrest and orally advised them of their Miranda rights. Officer Graham's narcotics dog, after smelling the van, gave a positive signal that the van contained drugs.[1] After being arrested and given his Miranda warnings again, ter Horst made a written statement. In that statement he stated unequivocally that he had consented to Officer Graham's search of the van. He also claimed he did not know the contents of the suitcases, which he said he and Jackson were hauling for a friend named John Wilson.
 
 
 6
 The defendants were indicted and charged with conspiracy to possess marijuana with intent to distribute it and conspiracy to distribute marijuana as well as possession with intent to distribute more than 100 kilograms of the substance, and interstate travel to facilitate drug distribution. Both defendants pled not guilty and filed motions to suppress evidence, arguing the search of the van was unlawful because the initial stop was pretextual, the search was conducted without a warrant, neither ter Horst nor Jackson voluntarily consented to search, and, in the alternative, the search exceeded the scope of consent.
 
 
 7
 Following a hearing, the district court denied the defendants' motions to suppress, finding that Officer Graham stopped the van for a "legitimate law enforcement purpose," not as a pretext for investigation of another crime. The court also concluded that ter Horst's consent to search the van was voluntary, especially in light of his written statement to that effect. Finally, even if the consent was not valid, the court ruled that the evidence obtained from the search was admissible under the "inevitable discovery" rule. As stated, the jury found both defendants guilty on each count.
 
 II.
 
 8
 The defendants' argument that the district court erred in denying their motion to suppress the physical evidence found in the van is foreclosed by this court's en banc decision in United States v. Ferguson, 8 F.3d 385 (1993), cert. denied, 115 S.Ct. 97 (1994). In Ferguson we held that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." Id. at 391. We went on to state that "the existence of probable cause should be determined on the totality of the circumstances," and "[t]his totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective." Id. at 392 (quoting United States v. Barrett, 890 F.2d 855, 861 (6th Cir.1989)).
 
 
 9
 We made clear in Ferguson that so long as there is probable cause for a traffic stop, that stop does not become pretextual just because the officer making the stop is also investigating the likelihood of other offenses such as drug possession and distribution. The cases from other circuits holding such stops to be pretextual were analyzed and rejected or distinguished in Ferguson. The defendants rely on two of those cases here: United States v. Smith, 799 F.2d 704 (11th Cir.1986) and United States v. Guzman, 864 F.2d 1512 (10th Cir.1988). After Ferguson, these decisions are no longer persuasive authority in this Circuit.
 
 
 10
 It is manifest from our statement of facts that Officer Graham had probable cause to stop the defendants' van. Therefore, the stop was not pretextual, and it did not taint ter Horst's consent to search the van.
 
 III.
 
 11
 Both defendants also argue that ter Horst's "purported" consent was coerced, and therefore invalid. It must be remembered that the government does not rely only upon oral consent; ter Horst signed a handwritten statement in which he acknowledged giving his consent to search the van.
 
 A.
 
 12
 The Supreme Court discussed the consent exception to the general rule that warrantless searches are "per se unreasonable" in Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Writing for the Court, Justice Stewart stated that whether a consent to search was "voluntary" or resulted from coercion or duress "is a question of fact to be determined from the totality of all the circumstances." Id. at 227. There is no requirement that the person giving consent be advised or otherwise know that he or she has the right to withhold consent. Id. at 230-31.
 
 
 13
 In this case the district judge entered a written order denying the motion to suppress in which he discussed and analyzed the evidence surrounding ter Horst's consent to search the van. Based on the totality of the circumstances as revealed by that evidence, the court found that the officers did not apply coercion of any kind and that the consent was voluntarily given. This court must accept this finding of fact because it is not clearly erroneous. United States v. French, 974 F.2d 687, 691 (6th Cir.1992), cert. denied, 113 S.Ct. 1012 (1993).
 
 
 14
 The district court also found that ter Horst's consent was binding on Jackson, who heard the conversation in which ter Horst gave his consent and raised no objection. We may not overturn this finding, either. The Supreme Court has held that common authority for consent to search property or effects rests on "mutual use of the property by persons generally having joint access or control for most purposes...." United States v. Matlock, 415 U.S. 164, 171 n. 7 (1974). Jackson told Officer Graham that he had rented the van for ter Horst; the two men obviously had "mutual use" of the van and "joint access or control" over it. Therefore ter Horst's consent was effective against Jackson as well.
 
 B.
 
 15
 The defendants contend that even if ter Horst's consent was voluntary, the search actually conducted by the officers exceeded the scope of the consent. We think not. The discussion between ter Horst and Officer Graham revealed that ter Horst's only concern was that the officers not remove all the contents of the van. Otherwise, ter Horst placed no limits on his consent. The Supreme Court held in Florida v. Jimeno, 500 U.S. 248, 251 (1991), that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Applying this standard, it is clear that a reasonable person would believe under all the circumstances that Officer Graham had ter Horst's consent to examine the contents of this particular luggage.
 
 IV.
 
 16
 Jackson also argues the evidence that he was a member of a conspiracy to possess and transport marijuana for the purpose of distribution was insufficient to support his conviction. We disagree. The evidence clearly satisfied the familiar test set out in Jackson v. Virginia, 443 U.S. 307, 319 (1979): "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 
 
 17
 Both defendants' convictions are AFFIRMED.
 
 
 18
 NATHANIEL R. JONES, Circuit Judge, concurring.
 
 
 19
 Inasmuch as I dissented in Ferguson, I continue to believe that case was wrongly decided. Given the binding effect of Ferguson on this case, the majority's holding is the correct one. For the reasons set forth in my Ferguson dissent, and subsequent dissents, it is my sincere hope that this circuit will revisit this most important issue. Therefore, I respectfully concur in the outcome of today's opinion.
 
 
 
 [1]
 The van was searched again at the police station after a warrant was obtained, and nearly 472 pounds of marijuana were removed