**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Terrance A. WILLIAMS, Defendant–Appellant.**

**No. 89–4083.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 21, 1991.

Decided Nov. 15, 1991.

Ronald B. Bakeman, Asst. U.S. Atty. (argued and briefed), Cleveland, Ohio, for plaintiff-appellee.

M. Kathryn Croft (argued and briefed), Akron, Ohio, for defendant-appellant.

Before JONES and GUY, Circuit Judges; and PECK, Senior Circuit Judge.

RALPH B. GUY, JR., Circuit Judge.

After defendant's conviction was affirmed by this court, he sought review by certiorari in the United States Supreme Court. The Supreme Court, in an order filed April 29, 1991, vacated our judgment and ordered the case remanded "for further consideration in light of the position presently asserted by the Solicitor General in his brief for the United States...." —— U.S. ——, 111 S.Ct. 1572, 114 L.Ed.2d 74.

The brief submitted by the Solicitor General argued in favor of affirmance of our decision, but did state that it agreed with petitioner that district court probable cause determinations should be reviewed under a *de novo* standard. The rule in the Sixth Circuit, followed originally in this case, is

that such review is under a "clearly erroneous" standard. *See United States v. Sangineto–Miranda,* 859 F.2d 1501, 1508 (6th Cir.1988), and *United States v. Pepple,* 707 F.2d 261, 263 (6th Cir.1983).[1] The Solicitor General went on to argue that "review is not warranted because, in our view, the result in this case would be the same under the *de novo* standard." (Solicitor General's Brief at 8).

Although one panel of this court is bound by the on-point published decision of an earlier panel, we can nonetheless indicate what our result would be if we examined the probable cause determination *de novo.* Like the Solicitor General, we conclude that the result does not change:

> By the time petitioner was apprehended, the officers not only knew the facts that gave rise to their reasonable suspicion, but also had observed petitioner and his companion flee and refuse to halt in response to the officers' command. Moreover, the officers saw petitioner's companion tear a plastic bag open while he was fleeing and attempt to discard a substance that appeared to be crack cocaine. Petitioner states that "[m]erely being in the presence of one who commits a crime, even knowing that it is being committed, is not sufficient to charge the observer as a principal." Pet. 7. But petitioner was more than a mere observer, and there was probable cause to arrest him as well as the other man. The police had watched the two men get off the bus together, walk to the car together, walk down the street together, and then flee from the officers at the same time. When one of the two tried to rid himself, while he was fleeing, of a substance that appeared to be crack cocaine, the officers had an adequate basis to believe that both petitioner and his companion were acting in concert to transport and distribute cocaine. *See United States v. Patrick, supra,* 899 F.2d at 171–72.[2] Thus, under any standard of review the lower courts' conclu-

---

**1.** The Solicitor General's brief points out that there is a split in the circuits on this issue, but that the majority view is that review of probable

cause determinations is *de novo. See, e.g., United States v. Patrick,* 899 F.2d 169, 171 (2d Cir. 1990).

sion that petitioner's arrest was justified by probable cause was correct.

2 As this Court has observed, probable cause deals not with certainties, but with probabilities judged according to practical and common sense standards and based on the totality of the circumstances. See *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *Illinois v. Gates*, 462 U.S. 213, 231–232, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983).

(Solicitor General's Brief at 8–9).

■ We also note in passing that our analysis of the issue of whether a seizure occurred when the officers began to chase the defendant and shouted, "Halt," was totally consistent with the result reached by the Supreme Court in the subsequent case of *California v. Hodari D*, — U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Therefore, we reiterate that no seizure occurred under the facts here until the actual arrest took place, by which time the officers had probable cause for the arrest.

Defendant's conviction is AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

In my original review of this case, I was particularly disturbed by the district court's apparently untroubled conclusion that probable cause supported Terrance William's arrest, despite the undeniably significant racial component underlying that determination. Believing that my Colleagues shared my concern, but equally mindful of the extremely deferential stance from which we review a trial court's factual findings, I concurred, albeit with some reservation, in this panel's original statement that, "[a]lthough we view the issue as a close one, we cannot say the conclusion of the district court was clearly erroneous." The majority now concludes, somewhat inexplicably, that we would have reached the same conclusion had our initial review been plenary. Because the passage of time has not lessened my conviction that race has no place in the assessment of probable cause, I dissent.

The district court found that the drug courier profile employed by the officers in the instant case led them to focus their attention on travellers who were: (1) young African–American males; (2) arriving into Cleveland from Detroit; (3) using the Greyhound bus system; (4) arriving in the late evening or early morning hours; (5) carrying no luggage; and (6) not met by family members or acquaintances. Factors two, three, and four are in and of themselves hardly suspicious and, more important, gave the officers no logical grounds for suspecting Williams and his companion above any of the other passengers who deboarded the bus that evening. *Cf. United States v. Andrews*, 600 F.2d 563, 566 (6th Cir.) (holding that travel from a "source city" cannot be regarded as in any way suspicious), *cert. denied*, 444 U.S. 878, 100 S.Ct. 166, 62 L.Ed.2d 108 (1979). Nor did the government offer even a scintilla of evidence, statistical or otherwise, to rebut the entirely plausible, common-sense suppositions that many of those making the relatively short journey from Detroit to Cleveland would not be carrying luggage or would not necessarily have family or friends waiting to greet them. In short, the drug courier profile as used in this case creates the overwhelming impression that the officers singled out Terrance Williams primarily if not solely because he was a young African–American male, and thereby seriously draws into question whether the officers' conduct does not run afoul of the protections guaranteed by the Equal Protection Clause against discriminatory treatment on the basis of race. As the Fifth Circuit has recently observed, "[t]he heart of the Equal Protection Clause is its prohibition of discriminatory treatment. If a governmental actor has imposed unequal burdens based upon race, it has violated the clause." *Samaad v. City of Dallas*, 940 F.2d 925, 932 (5th Cir.1991).

That Williams was a young African–American male not only influenced the officers' decision to trail Williams and his companion, but was explicitly relied upon by the district court in its determination that probable cause supported Williams' apprehension and arrest. This court as well as others continue to operate under the misapprehension that race plays less of a role in this Nation's treatment of its citizens, in particular through its law enforcement agents, than reality compels. The singling out of African Americans simply on the

basis of race engenders and legitimates a negative stereotype of blacks, and undoubtedly is subject to the strictest scrutiny. *See Rogers v. Lodge*, 458 U.S. 613, 617 n. 5, 102 S.Ct. 3272, 3275 n. 5, 73 L.Ed.2d 1012 (1982). The use of an immutable characteristic such as race to support a probable cause determination is clearly unconstitutional. For this court to permit law enforcement officers to cloak blatantly racist attitudes in a generic drug courier profile is nothing short of outrageous.

I cannot come away from this case without feeling deeply troubled: troubled that this Nation's citizens are receiving disparate treatment at the hands of police officers primarily on the basis of race, troubled that such unequal racial treatment is considered increasingly appropriate by trial courts, and most troubled by this court's conclusion that such race-based treatment is entirely unobjectionable as a legal matter. It is undoubtedly tragic when a significant number of black Americans fear that they are presumptively under suspicion of criminal activity in the eyes of the law merely because of their race. Infinitely more tragic is the strong possibility that their fear may be justified.

I respectfully dissent.