16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Cipriano Garcia RODRIGUEZ and Pablo Rivera, Defendants-Appellants.
 Nos. 93-5629, 93-5718.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1994.
 
 Before: NELSON and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendants were convicted of conspiracy to possess marijuana with intent to distribute it. The main issue presented in their appeal is whether the marijuana evidence ought to have been suppressed as the fruit of an incriminating statement given by a co-conspirator after an illegal arrest. Concluding that the co-conspirator was not arrested illegally--a conclusion that makes it unnecessary for us to address many of the contentions advanced by the parties--we shall affirm the convictions.
 
 
 2
 * A
 
 
 3
 On August 1, 1992, the Cincinnati/Northern Kentucky International Airport Police Department received a telephone call from the manager of a motel near the airport. The manager reported that she was suspicious of four people who had checked into the motel, defendant Cipriano Rodriguez and three other individuals. She said that Mr. Rodriguez had stayed at the motel on numerous occasions in the past, usually arriving in a van, leaving a few hours later, and returning in a different vehicle. Mr. Rodriguez would refuse to allow employees of the motel to clean his room, the manager reported, and he always appeared to have little or no luggage. This time, the manager said, Mr. Rodriguez was driving a van with temporary Kentucky license plates; on past occasions his vans had different license tags.
 
 
 4
 Viewing Mr. Rodriguez' behavior as typical of that of narcotics couriers, the airport police dispatched an officer to the motel to investigate. When the officer got there, Mr. Rodriguez and the van were gone. The officer ascertained that after checking into the motel Rodriguez had made several phone calls to an address in El Paso, Texas. A background check disclosed that Mr. Rodriguez had three prior arrests for narcotics offenses and one arrest for attempted murder; a further check showed that $20,000 in cash had been seized from Mr. Rodriguez' son, Gerardo, in 1991. At the time of the seizure, which was made at the Cincinnati/Northern Kentucky International Airport, Gerardo Rodriguez had been in the company of a known Cincinnati-area narcotics dealer.
 
 
 5
 The airport police assigned five officers to conduct surveillance of Cipriano Rodriguez' room at the motel. Mr. Rodriguez and defendant Pablo Rivera subsequently pulled up in a gray Honda automobile with Ohio license plates. A check of the license plates disclosed that the car was registered to a suspected drug dealer in southern Ohio.
 
 
 6
 The officers saw Messrs. Rodriguez and Rivera enter the motel room and come out with two suitcases. After placing the suitcases in the trunk of the Honda, the suspects moved the car away from their room and parked it in another section of the parking area.
 
 
 7
 Defendants Rodriguez and Rivera, accompanied by Gerardo Rodriguez and two youngsters who turned out to be members of the Rodriguez family, then walked from the motel to a nearby restaurant. They left the restaurant about an hour later and got into the Honda. The officers, fearing that they had been noticed, decided to stop the group at this point. They approached the car with weapons drawn and ordered everyone out of the car. The suspects were handcuffed and patted down for weapons. The officers announced that they were conducting a narcotics investigation and asked who the owner of the Honda was. Mr. Rivera said that he had borrowed the car from a friend, but he was unable to come up with the friend's name.
 
 
 8
 The suspects consented to a search of their room, but refused to consent to a search of the automobile. None of the three adults would consent to a search of his person.
 
 
 9
 A search of the motel room revealed no contraband. The police then advised the suspects of their constitutional rights and told them that they would be detained for investigative purposes while officials sought a warrant for a search of the Honda. A police dog sniffed the car but apparently did not indicate that drugs were present.
 
 
 10
 The suspects were placed in police cars and taken to the airport police station. About two hours after arriving at the police station, Gerardo Rodriguez told the police that the group had picked up a load of marijuana in Alabama to bring to Cincinnati for sale. Following this confession, the three adult suspects were placed under formal arrest.
 
 
 11
 Using Gerardo's confession, among other things, the police prepared an affidavit in support of an application for a search warrant. Such a warrant was issued early in the evening of August 1. The ensuing search uncovered fifty to sixty pounds of marijuana in the suitcases in the trunk of the Honda. A grand jury subsequently indicted Cipriano Rodriguez, Pablo Rivera and Gerardo Rodriguez, charging each of them with one count of conspiring to possess marijuana with intent to distribute it, one count of possessing marijuana with intent to distribute it, and one count of travelling in interstate commerce to facilitate an illegal narcotics transaction.
 
 B
 
 12
 Prior to trial the three defendants filed motions to suppress the marijuana. They asserted that they had been illegally arrested in the parking lot of the motel and that the inculpatory statement by Gerardo and the search of the car were tainted by the illegal arrests.
 
 
 13
 The suppression motions were referred to a magistrate judge, who conducted an evidentiary hearing. The magistrate then issued a report and recommendation in which he concluded that the defendants had been subjected to an illegal arrest in the parking lot of the motel. The magistrate recommended that Gerardo Rodriguez' subsequent inculpating statement be suppressed as the fruit of his illegal arrest. The magistrate judge recommended overruling the motion to suppress the marijuana found in the car trunk, however, concluding that none of the defendants had demonstrated a reasonable expectation of privacy in the vehicle and thus had no standing to contest the search.
 
 
 14
 The district court adopted the report and recommendation, and the indictment against Gerardo Rodriguez was dismissed. Pursuant to plea agreements, Cipriano Rodriguez and Pablo Rivera entered conditional pleas of guilty to the first count of the indictment; the remaining counts were dismissed. Mr. Rodriguez was subsequently sentenced to a 24-month term of imprisonment and Mr. Rivera to a term of 21 months. Both men filed timely notices of appeal.
 
 II
 
 15
 We agree with the district court that the evidence found in the trunk of the Honda should not have been suppressed, but our reason for reaching this conclusion is that we do not believe that the suspects were detained illegally. The Fourth Amendment prohibits only "unreasonable" seizures, and we do not believe that the police acted unreasonably here. The fruit-of-the-poisonous-tree argument has no application, obviously, where the tree is not poisonous.
 
 
 16
 The detention of the men was not unreasonable if based on probable cause, and our review of probable cause determinations is de novo. United States v. Ogbuh, 982 F.2d 1000, 1002 (6th Cir.1993); United States v. Williams, 949 F.2d 220, 221 (6th Cir.1991), cert. denied, 112 S.Ct. 2308 (1992). The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Ogbuh, 982 F.2d at 1002 (quoting Illinois v. Gates, 462 U.S. 213, 243 n. 13 (1983)). "Probable cause is a flexible, common-sense standard, Texas v. Brown, 460 U.S. 730, 742 (1983), and it requires a reviewing court to undertake a "realistic assessment of the situation from a law enforcement officer's perspective." United States v. Barrett, 890 F.2d 855, 861 (6th Cir.1989).
 
 
 17
 "A warrantless arrest is justified if, at the time of the defendant's arrest, police officers have probable cause to believe that an offense has been, is being, or will be committed." United States v. Sangineto-Miranda, 859 F.2d 1501, 1508 (6th Cir.1988) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). The test for determining the existence of probable cause is a "wholly objective one"--a reviewing court must ask whether a "man of reasonable caution would be warranted in the belief that the person arrested had or will commit a crime." United States v. Anderson, 923 F.2d 450, 456 (6th Cir.) (citation omitted), cert. denied, 499 U.S. 980 (1991).
 
 
 18
 Probable cause does not require that police officers actually observe a suspect committing a clearly illegal act. "There is probable cause if a 'succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct is less likely than a criminal one.' " Id. (quoting 1 Wayne LaFave, Search and Seizure Sec. 3.2(e) at 595). If officers see suspects engaging in a sequence of activities typical of an illegal narcotics transaction, or if they detect suspects attempting to conceal suspicious behavior, such considerations should be weighed in ascertaining the existence of probable cause. United States v. Hughes, 898 F.2d 63, 64 (6th Cir.1990).
 
 
 19
 The totality of the circumstances presented in the case at bar strongly suggests that by the time the police officers approached the defendants in the motel parking lot, they had probable cause to detain them. A reasonable person in the officers' position could well have concluded that the defendants were probably in the process of conducting a narcotics transaction.
 
 
 20
 When the officers confronted the defendants, they knew that Cipriano Rodriguez had checked into the airport motel before and had always changed vans in the course of his stay. Drug couriers, they knew from experience, often followed this pattern. The officers knew that Mr. Rodriguez had always refused to allow motel staff into his room to perform routine cleaning--another circumstance indicating that he had something to hide. The officers were aware that Mr. Rodriguez had at least three prior arrests for narcotics offenses and one arrest for attempted murder. They were also aware that he had been indexed in 1991 in a law-enforcement computer network as a suspected multi-kilogram cocaine distributor. The officers knew that Gerardo Rodriguez had been found to have $20,000 in cash on his person at a previous visit to the Cincinnati/Northern Kentucky Airport, and that he had been accompanied on that date by a known Cincinnati-area narcotics dealer. The officers watched the defendants load two suitcases into the trunk of the Honda, lock the trunk, and move the car away from their room, a maneuver that the officers recognized as typical of drug couriers. The officers knew that the gray Honda which had replaced the white van was registered to a suspected southwest Ohio drug dealer--which could have explained Mr. Rivera's highly suspicious inability to come up with the name of the person from whom he had borrowed the car. Finally, the officers watched the defendants behave suspiciously as they walked from the motel to a nearby restaurant. Two of the men walked slowly past a vehicle occupied by one of the surveillance officers and looked carefully into the car and at the car's license plates, and then looked directly at the officer. Two other members of the group approached a car occupied by another of the surveillance officers and looked into the car. Shortly after spotting the officers, the suspects appeared to be getting ready to drive off with the suitcases. The totality of these circumstances, we are satisfied, would have led a reasonable person in the officers' position to conclude that a conspiracy to possess or distribute illegal drugs was in progress and that prompt action was required to prevent the conspirators from escaping. "Although many of these circumstances, taken alone, arguably could have been consistent with innocent or criminal behavior, when viewed in their totality they would lead a prudent person to believe that defendants were engaged in criminal activity." Anderson, 923 F.2d at 456 (quoting United States v. Holzman, 871 F.2d 1496, 1504 (9th Cir.1989) (emphasis added)).
 
 
 21
 The convictions of Cipriano Rodriguez and Pablo Rivera are hereby AFFIRMED.