91 F.3d 144
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America Plaintiff-Appellee,
v.
Melvin BEASLEY, Defendant-Appellant.
 No. 95-6289.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1996.
 
 Before: ENGEL, SUHRHEINRICH, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Beasley appeals his conviction on firearms and cocaine charges, arguing that the district court erred in (1) denying his motion to suppress evidence; and (2) failing to make essential factual findings in its oral ruling on the motion to suppress as required under Fed.R.Crim.P. 12(e). Because we find that no exception to the warrant requirement applies, we reverse the district court's denial of Beasley's motion to suppress and remand this case to the district court for further proceedings consistent with this decision.
 
 I.
 
 2
 Responding to an emergency call, Officer "Chuck" Pugh and several other police officers arrived at the residence of defendant Melvin Beasley where Pugh found two persons, Melvin Beasley's brother Eddie and Michael Anderson, lying in the driveway with wounds indicating they had been shot. A third person, Jimmy Sain, Jr., also was lying in the driveway complaining of a gunshot wound. On further inspection, Officer Pugh found defendant Melvin Beasley sitting down against the frame of the back doorway of his house with serious wounds to the forehead and hand.
 
 
 3
 Officer Pugh then entered the house in search of other victims and to ensure that no one else was present. He testified that one of the bedrooms appeared to have been ransacked and there were several large bloodstains giving the appearance that a shooting had occurred there. Beasley later testified that this is where he had been shot. There was also blood in the living room. Officer Pugh did not find any other persons or weapons in the house.
 
 
 4
 By the time Officer Pugh emerged from the house, an ambulance and additional police officers had arrived. While attempting to "secure the area" and look for witnesses, Officer Pugh was told that a gun had been carried from the scene to an adjacent house. Officer Pugh retrieved the gun from the owner of that home and showed it to Beasley, asking him if it was his gun. Beasley is alleged to have responded: "[N]o, mine is in the bedroom."
 
 
 5
 Officer Pugh then re-entered Beasley's house and searched the bedroom. It is this search that is in question on appeal. Officer Pugh testified that there was a chest of drawers in the bedroom with two drawers pulled open. According to Pugh, he saw a 9mm revolver inside one of those drawers. On top of a dresser, and in plain view, he found a set of electronic ounce scales and a kitchen knife with white residue. Later tests revealed that both the knife and scales contained cocaine residue.
 
 
 6
 While it is not clear from the record exactly when this occurred, Officer Pugh questioned Beasley about events surrounding the shooting while Beasley was being bandaged by emergency personnel. Officer Pugh testified that Beasley said he had been shot by a man while trying to sell cocaine to him.
 
 
 7
 The government justifies Officer Pugh's reentry into the house based on exigent circumstances related to a "hectic scene" that had developed outside the house. Friends of Jimmy Sain had arrived at the house believing that Sain had been shot by Beasley. Officer Pugh testified that a fight broke out and about 30 people who were present had to be subdued and handcuffed.
 
 
 8
 The government concedes that Beasley did not give permission for any search. Beasley denies that Officer Pugh ever showed him the gun, denies making any statement about a gun being in the bedroom and maintains that the search actually occurred after he was taken away by ambulance. He states that before being taken away he closed the door to his house to prevent theft. There was testimony that a neighbor observed someone in Beasley's house later than evening after Beasley had been taken away. At trial, Beasley moved for suppression of the firearm, knife and scales found in the subsequent entry.
 
 
 9
 The district judge granted Beasley's motion with respect to the knife and scales, but denied it as to the gun. A jury convicted Beasley of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and of possessing a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 71 months imprisonment. Beasley appeals his conviction.
 
 II.
 
 10
 On appeal, Beasley concedes that the initial warrantless search of his home was proper as a security sweep, but maintains that the reentry without a warrant was unlawful. The government asserts that the seizure of the handgun was effected pursuant to the exigent circumstances' exception to the warrant requirement and was necessary to protect the safety of the officers and others at the scene.
 
 
 11
 "We review de novo the '[d]istrict [c]ourt's legal conclusions with respect to the issue of exigency; however, the court's factual findings on the existence of exigent circumstances will be disturbed only if they are clearly erroneous.' " United States v. Johnson, 22 F.3d 674, 680 (6th Cir.1994) (quoting United States v. Johnson, 9 F.3d 506, 508 (6th Cir.1993)). We must "review the evidence in the light most likely to support the district court's decision." United States v. Roark, 36 F.3d 14, 16 (6th Cir.1994) (quoting United States v. Williams, 962 F.2d 1218, 1221 (6th Cir.), cert. denied, 506 U.S. 892 (1992)). The government bears the burden of proving that exigent circumstances existed. Roark, 36 F.3d at 17.
 
 
 12
 "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States District Court, 407 U.S. 297, 313 (1972). Accordingly, the Supreme Court has declared that searches and seizures inside the home are "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). "Absent exigent circumstances, police officers may not enter an individual's home or lodging to effect a warrantless arrest or search." United States v. Morgan, 743 F.2d 1158, 1161 (6th Cir.), cert. denied, 471 U.S. 1061 (1985). The police "bear a heavy burden when attempting to demonstrate an urgent need" to make a warrantless search. Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984).
 
 
 13
 We have described exigent circumstances as something of a term of art, denoting the existence of real immediate and serious consequences that would certainly occur were a police officer to postpone action to get a warrant. O'Brien v. City of Grand Rapids, 23 F.3d 990, 997 (6th Cir.1994). The phrase has been understood by the Supreme Court generally to comprise two separate sets of circumstances: 1) the imminent destruction of vital evidence, and 2) the need to protect or preserve life or avoid serious injury either of police officers or others. Id.
 
 
 14
 Our decision in Johnson, 22 F.3d at 674, is instructive in applying the above principles to the facts of the present case. In Johnson, police officers responding to an emergency call arrived at an apartment where a 14-year-old girl was being held against her will. The police broke into the apartment and freed the girl. She told the police that the defendant had forced her to have sex with him several times over a four-day period and had threatened to shoot her and her family if she tried to leave. She then indicated that guns used by the defendant to threaten her were in the apartment. The police seized the guns after the girl took them to the closet where they were located. The district court denied defendant's motion to suppress the weapons seized.
 
 
 15
 On appeal, the government argued that the district court ruled properly because exigent circumstances existed. Specifically, the government asserted that the warrantless seizure was necessary to avoid destruction of evidence and avoid risk of danger to police or others. We reversed the district court's denial of the defendant's motion to suppress, ruling that once the girl was freed the police had ample time to obtain a search warrant.
 
 
 16
 In the present case, the government argues that the presence of a firearm inside the house, combined with the unruly mob outside, created exigent circumstances necessitating the warrantless entry. This argument lacks merit. As in Johnson, the police had ample opportunity to obtain a warrant. In fact the district judge, in granting Beasley's motion to suppress the knife and scales, makes a compelling argument that a warrant should have been obtained for the second search:
 
 
 17
 The court concludes the motion to suppress the items seized from Mr. Beasley's home, the electronic ounce scale and a knife with cocaine residue on them should be suppressed and the motion to suppress these items should be granted. If the officers had seized these items in plain view when they first entered Mr. Beasley's home, there would have been, in the court's view a--that would have been in the court's view a valid seizure. However, this was not done, the officers left the home when the paramedics readied Mr. Beasley for transfer by ambulance to a medical facility. The testimony is that Mr. Beasley closed the door to his home before he left to prevent theft. Mr. Beasley testified he did not give the officer consent to search his home.
 
 
 18
 The court concludes the officer should have obtained a search warrant from a judge before re-entering the home to conduct a search. The officer certainly had probable cause to do so. It was apparently obvious to the officers at some point the shooting was the result of a drug deal gone bad. Because the officers failed to obtain a search warrant by first presenting the facts to a neutral magistrate to conduct a search of Mr. Beasley's home and because the evidence indicates Mr. Beasley did not give consent to the officers to search his home, the court concludes the motion to suppress all of the items seized[1] from the home as evidence in this case should be granted. The result is the only items left for trial in this case will be the question of whether Mr. Beasley illegally possessed a firearm.
 
 
 19
 In suppressing the knife and scales, the district court fails to explain why the firearm seized during the same search should be treated differently.[2] As this Court stated in Johnson, "[t]he mere presence of firearms does not create exigent circumstances." Id. at 680. Therefore, all of the evidence seized during the second warrantless entry should be treated alike. We do not see the logic in differentiating between the validity of the seizure of the firearm on one hand and the knife and scales on the other.
 
 
 20
 Further, the record does not indicate that the second entry was motivated by a fear that someone from the crowd outside would run into the house in an attempt to commandeer a firearm. It is noteworthy that Officer Pugh in his testimony does not draw any connection between the dangers posed by the crowd outside and the gun inside. Nothing in the record indicates the existence of real immediate and serious consequences that would certainly occur were a police officer to postpone action to get a warrant. O'Brien, 23 F.3d at 997. In fact, the record shows that the crowd was readily subdued and there is no evidence that anyone attempted to enter the house. A number of police officers were present at the scene during the time of the second entry. If there genuinely was a risk that someone from the crowd would run into the house to obtain a weapon, the government fails to explain why the police did not simply secure the area by posting officers at the entrances to the house. The police officers who took part in the subsequent entry could just as easily have secured the premises while a search warrant was obtained.
 
 
 21
 In addition to asserting that exigent circumstances existed, the government also maintains that there was really just one ongoing search and that the second entry, which occurred "just a very short time later", was part of the initial security sweep. This assertion contradicts the reasoning of the district court's ruling in regard to the knife and scales. It also conflicts with the Supreme Court's treatment of similar subsequent searches.
 
 
 22
 The Supreme Court's rulings in Mincey v. Arizona, 437 U.S. 385 (1978), and Thompson v. Louisiana, 469 U.S. 17 (1985), are instructive on this point. In Mincey, officers responded to a shooting in which a police officer was killed and the defendant was seriously wounded. The police searched the premises for other injured persons and found several. The police did not make a further search, but simply guarded the suspects and the premises. Within ten minutes, homicide detectives arrived at the scene and took charge. After supervising the removal of the officer and suspects, the homicide detectives began a search that lasted four days. The Court ruled that exigent circumstances justified the initial search for victims, but held the subsequent search invalid:
 
 
 23
 [A] warrantless search must be "strictly circumscribed by the exigencies which justify its initiation," Terry v. Ohio, 392 U.S. [1, 25-26 (1968),] and it simply cannot be contended that this search was justified by any emergency threatening life or limb. All the persons in Mincey's apartment had been located before the investigating homicide officers arrived there and began their search.
 
 
 24
 Mincey, 437 U.S. at 393.
 
 
 25
 In Thompson, police officers responding to an emergency call from the defendant's daughter entered the defendant's home and made a cursory search. The officers discovered the defendant lying unconscious in a bedroom. Her husband was found dead of a gunshot wound in another room. The officers immediately transported the defendant to the hospital and secured the scene. Thirty-five minutes later, two homicide investigators initiated a two-hour warrantless search of the premises, finding a pistol inside a chest of drawers. The Court held the subsequent search invalid. It rejected the Louisiana Supreme Court's attempt to distinguish Mincey based on the length of the search stating, "nothing in Mincey turned on the length of time taken in the search." Thompson, 469 U.S. at 21.
 
 
 26
 Similarly, the facts of the present case indicate that there was not one ongoing search, but rather two distinct and separate entries into the house. See also Arizona v. Hicks, 480 U.S. 321 (1987) (during valid search of house based on exigent circumstances following shooting, officer's moving of stereo equipment to examine serial numbers constituted a search separate and apart from the search for the shooter, victims and weapons). The first search was clearly justifiable based on an emergency situation following a shooting in which the police sought to ensure that there were no additional victims or others posing danger. The police could have legitimately seized evidence in plain view during the course of their legitimate emergency activities in that initial security sweep of Beasley's home. See Mincey, 437 U.S. at 393. However, the second entry constituted a separate search by Officer Pugh, initiated solely to retrieve the firearm. Here, as in Mincey, there is no suggestion that a warrant could not easily and conveniently have been obtained. Id. at 394.
 
 
 27
 The government therefore fails to meet its "heavy burden" in seeking to justify its warrantless entry. See Welsh, 466 U.S. at 749-50. As we stated in United States v. Ogbuh, 982 F.2d 1000 (6th Cir.1993): "If police have little incentive to obtain a warrant, they will not do so. The law must provide that incentive; otherwise, the warrant requirement of the Fourth Amendment will become a dead letter." Id. at 1004 (citing Payton, 445 U.S. at 573).
 
 
 28
 We therefore find that the district judge erred in applying the law to the facts of this case. Accordingly, we reverse the district court's denial of Beasley's motion to suppress the firearm.
 
 III.
 
 29
 Beasley further argues that the subsequent statements he made to police concerning the alleged drug transaction should also be suppressed as the "fruit" of an illegal search. Beasley cites this court's decision in Ogbuh arguing that "any ensuing interrogations or searches" were likewise unlawful. Ogbuh, 982 F.2d at 1005.
 
 
 30
 As the Supreme Court stated in Segura v. United States, 468 U.S. 796 (1984):
 
 
 31
 Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion. The question to be resolved when it is claimed that evidence subsequently obtained is "tainted" or is "fruit" of a prior illegality is whether the challenged evidence was 'come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'
 
 
 32
 Id. at 804-05 (quoting Wong v. United States, 371 U.S. 471, 488 (1963)) (emphasis in original). "[E]vidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence. Suppression is not justified unless 'the challenged evidence is in some sense the product of illegal governmental activity.' " Segura, 468 U.S. at 815 (quoting United States v. Crews, 445 U.S. 463, 471 (1980).
 
 
 33
 In the present case, the record before this court does not make clear whether the seizure of the firearm was the "but for" cause of the subsequent incriminating statements by Beasley. Therefore, this issue is left for a factual determination by the district court on remand.
 
 IV.
 
 34
 As our ruling is dispositive on the issue of the search, we need not address the defendant's assertion that the district court failed to make essential factual findings under F.R.Crim.Proc. 12(e) in its oral ruling on Beasley's motion to suppress.
 
 
 35
 Because we conclude that the second warrantless entry into Beasley's home was illegal, we REVERSE the district court's denial of Beasley's motion to suppress as to the firearm and REMAND this case to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 The district court here is referring only to the knife and scales, not the firearm
 
 
 [2]
 In denying the motion to suppress the firearm, the district judge focuses on potential Miranda issues and fails to provide any rationale for why the search was legitimate absent a warrant:
 First, dealing with the firearm, the court concludes that motion to suppress the firearm should be denied. When confronted with a gun and asked if it was his, Officer Pugh testified Mr. Beasley said, no, mine is in the bedroom. At that time Mr. Beasley was not in custody. He was viewed by the officer as a victim of a shooting. In fact Mr. Beasley testified someone unknown to him seeking to purchase illegal drugs had shot him. Mr. Beasley claims that because Officer Pugh had known him for about 20 years and knew he had been convicted of some other criminal offense, that Officer Pugh should have known that he may have been convicted of a felony and thereupon should have warned him by giving him his Miranda rights. This matter is further complicated by Mr. Beasley's testimony denying that he owned the gun and denying that he told Officer Pugh the gun in the drawer was his. The court concludes the motion to suppress the firearm should be denied. Whether Mr. Beasley processed [sic] a firearm in violation of federal law is a fact question which in the court's judgment must be decided by a jury.