**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Lawrence THOMAS,**
**Defendant–Appellant.**

No. 02–5516.

United States Court of Appeals,
Sixth Circuit.

Oct. 8, 2003.

BEFORE: SUHRHEINRICH, COLE, and ROGERS, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Defendant–Appellant Robert Lawrence Thomas appeals from the denial of his motion to suppress evidence supporting his conviction on two weapons counts under 18 U.S.C. §§ 922(n) and (k). Thomas claimed below that Knoxville, Tennessee police officers had obtained evidence in violation of Thomas's rights under the Fourth Amendment and *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We find no constitutional violation and affirm the decision of the district court.

**I.**

At approximately 3:15 a.m. on November 30, 1999, three officers of the Knoxville Police Department were on routine patrol near the Walter P. Taylor housing project. Knoxville police officers routinely patrolled this project, knowing it to be a haven for drug activity. The officers spotted five men standing on a porch of an apartment building and became generally suspicious because of the lateness of the hour. The officers did not recognize any of the men, and therefore were not specifically aware

that any had committed a crime or had outstanding warrants. Nonetheless, the officers decided to initiate contact.

Officer Ray Offenbacher exited his vehicle and moved into position on the side of the apartment building in front of which the men were standing. He observed no criminal activity. Eventually, the five men began to disperse and each started to walk in the general direction of where Offenbacher was standing. As the men approached, Offenbacher stepped from the side of the building and into the men's path. Offenbacher ordered them to stop. Offenbacher testified that none of the men tried to run; however, none of the men stopped. Offenbacher testified that "[t]hey turned away from [him] and started to walk away from where [he] was coming from [sic]." Thomas walked onto a nearby porch and tried to open the screen door. Offenbacher testified that Thomas, unable to open the door, dropped a black object off the porch and out of sight. Offenbacher stated he "heard a clang" from the object dropped by Thomas–"like metal hitting concrete"– and ordered all of the men to the ground, and they complied. The other two officers, Walter Henry and an Officer Gallahar, arrived on the scene and the three officers found a loaded semi-automatic pistol with an obliterated serial number on the ground where Thomas had dropped it.

Thomas, a prior felon, was charged in the district court below with two counts of illegal possession of a firearm. The first charge was for possession of a firearm by a felon under 18 U.S.C. § 922(n), and the second was for possession of a weapon with an obliterated serial number under 18 U.S.C. § 922(k). Thomas filed a motion to suppress the pistol found at the scene. Thomas based his motion to suppress on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and claimed, first, that Offenbacher's order to Thomas and his

friends to stop constituted a seizure under *Terry* and the Fourth Amendment; and, second, that Offenbacher did not have reasonable suspicion to commence such a *Terry* stop against the men. On October 17, 2001, the magistrate judge held a suppression hearing. On October 31, 2001, the magistrate judge issued a report and recommendation denying the motion to suppress. On December 18, 2001, the district court adopted the magistrate judge's report.

On December 19, 2001, Thomas entered a guilty plea, reserving his right to appeal the denial of the motion to suppress. On April 1, 2002, Thomas was sentenced to two terms of thirty-six months (three years) to be served concurrently. On April 4, 2002, Thomas filed a notice of appeal; and his cause is timely before this Court.

## II.

We review the denial of a motion to suppress under a mixed standard. We review all factual determinations for clear error, and all legal conclusions *de novo*. *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir.2003).

Under the Fourth Amendment, police officers may briefly stop an individual if they have "reasonable suspicion" that he has committed a crime. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court first stated that "the police should be allowed to 'stop' a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity." *Id.* at 10, 88 S.Ct. 1868. "[I]n justifying the intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. 1868. We have found that the reasonable suspicion stan-

dard requires that "an officer making a *Terry* stop must have more than a hunch" that criminal activity is occurring, but "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir.2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)); *Houston v. Clark County Sheriff*, 174 F.3d 809, 813 (6th Cir.1999).

Thomas claims that Offenbacher lacked "specific and articulable facts" to stop him because Offenbacher had no reason to believe criminal activity was occurring or about to occur. Thomas asserts that "[t]here was nothing so unusual about several young men standing around a parking lot in Knoxville, Tennessee, that justified their seizure by police officers." Brief for Appellant, at 11; *cf. Northrop v. Trippett*, 265 F.3d 372, 382 (6th Cir.2001) (finding officers did not have reasonable suspicion where stop was based solely on tip stating victim's race and officers did not personally observe any suspicious behavior before making stop). Thomas further asserts that Offenbacher did not "smell drugs or alcohol or see any contraband." Moreover, the young men did not run when the police drove by.

The first inquiry in a case in which a defendant claims violation of his Fourth Amendment rights is whether the defendant was actually seized. In *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Supreme Court held that the term seizure "does not remotely apply ... to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee." *Id.* at 626, 111 S.Ct. 1547. In other words, the defendant must stop or be stopped to be "seized." The district court made a factual determination that Thomas did not comply with Offenbacher's order because he ignored the officer and "contin-

ued to walk away after receiving ... Offenbacher's instructions." Thomas contends that the district court's findings are erroneous and that the stop actually occurred when Offenbacher yelled "stop." In support, he points to Offenbacher's testimony that when he yelled "stop," he was within two feet of the "lead guys" in the group and within twelve feet of everyone in the group, who were bundled together. Further, Offenbacher testified that he intended to "have them stop" at that time.

■ The district court's findings are not clearly erroneous. The record also reflects that after Offenbacher told the men to stop, they kept walking, "a few steps at least." Furthermore, Thomas walked up on a porch and tried to open a screen door. Although the district court did not focus on Offenbacher's proximity to the men when he yelled stop, the undisputed facts reflect that the men did not stop at that time. Moreover, the district court found that "whether [Thomas] ... ran away from ... Offenbacher or simply walked away from him is a distinction with no legal significance." In light of *Hodari* and the plain language of the Fourth Amendment, a seizure does not occur until the suspect is actually detained. *See also United States v. Williams*, 949 F.2d 220, 222 (6th Cir. 1991) (holding that an officer yelling "halt" does not constitute a seizure until the suspect actually stops, and anything suspect discards or attempts to discard before he stops is not the fruit of a seizure and can give probable cause for arrest). Here, Thomas was not detained for Fourth Amendment purposes until he complied with Offenbacher's order to get on the ground. However, this did not occur until after Offenbacher saw Thomas drop what turned out to be a pistol from the porch on which he was standing. Therefore, the discovery of the pistol was not the fruit of a seizure, but the result of Thomas's volun-

tary decision to discard the pistol (in the officer's sight) as the officer approached. In line with *Hodari,* we find that Thomas was not seized under the Fourth Amendment until after he dropped the gun.

This case is very similar to our case of *United States v. Bobo,* 2 Fed.Appx. 401 (6th Cir.2001). In *Bobo,* officers attempted to initiate a stop of a taxicab by activating their siren. The cab pulled over and stopped, but the passengers opened the doors and ran. During an ensuing foot chase, one of the suspects threw or dropped several objects, two of which turned out to be bundles of methamphetamine. The suspect sought to suppress the bundles, claiming that the officers lacked reasonable suspicion to pull over his cab in the first instance. We held that neither suspect had been seized under the Fourth Amendment by the officers' attempt to pull over the taxi because the suspects were not detained by that action. "[N]o arrest could have occurred until the defendants either submitted to the officers' authority or until the officers physically seized defendants. Because the defendants fled, they were not 'seized' until physically apprehended." *Id.* at 405. Likewise, because Thomas did not stop when initially ordered to by Offenbacher, there was no Fourth Amendment seizure before he dropped the gun.

■ Furthermore, even if it were a stop, it was valid under *Terry.* Even if he lacked reasonable suspicion that the men were drug dealers, Offenbacher, nonetheless, possessed reasonable suspicion that the group was at least trespassing. Offenbacher knew that Thomas was standing on the porch of a woman who lived alone with her child. The resident, whom Offenbacher was unable to identify at the suppression hearing, had called the police approximately one week earlier to complain about trespassers standing on the porch at all hours, and that she was concerned because she had a small child. Therefore, in light of Offenbacher's personal knowledge, he had specific and articulable facts to reasonably suspect that the young men were trespassing, an arrestable offense.

Under *Terry,* an officer need only have reasonable suspicion of *some* crime to initiate a stop. "It is well established ... that an officer's actual motivation for making a ... stop is irrelevant to the constitutionality of that stop." *United States v. Bailey,* 302 F.3d 652, 656 (6th Cir.2002). Even if Offenbacher's true reason for approaching and stopping Thomas was based on a belief that Thomas and his friends were dealing drugs, the stop is nonetheless valid as long as there existed a legal justification for making the stop, even if that reason was merely pretextual. *See Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (foreclosing "any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *see also Bailey,* 302 F.3d at 656; *United States v. Hill,* 195 F.3d 258, 264 (6th Cir.1999) (stating that "an officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle") (*citing Whren,* 517 U.S. at 813, 116 S.Ct. 1769).

Certainly Offenbacher, not yet knowing the men's identities, did not possess probable cause to arrest Thomas for trespassing when he first approached. But, as stated above, probable cause is not required to commence a *Terry* stop, only enough of a suspicion to warrant further investigation. *See Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581. Therefore, we find that Offenbacher possessed reasonable suspicion that the men were trespassing, and any *Terry* stop was therefore constitutional.

### III.

Because Thomas was never seized under the Fourth Amendment, and because Offenbacher in any event possessed reasonable suspicion to stop and question Thomas under suspicion of trespassing, Thomas's assertion that the gun should have been suppressed must fail. For the foregoing reasons, we **AFFIRM** the decision of the district court.